IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN G.[1],

               Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

               Defendant.

Case No. 3:17-cv-01076-AC

OPINION AND ORDER

---

JAMIE M. EVANS
Evans & Evans, PC
610 SW Broadway, Suite 405
Portland, OR 97205
       Of Attorney for plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
RENATA GOWIE
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97201-2902

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member(s).

LISA GOLDOFTAS
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
    Of Attorneys for defendant

ACOSTA, Magistrate Judge:

John G. ("plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is reversed and remanded for further proceedings.

## Procedural Background

Plaintiff applied for SSI on February 5, 2013, alleging disability as of February 28, 2002, due to traumatic brain injury ("TBI"); migraines; arthritis; shoulder, hip, neck, and back pain; problems with his knees and feet; throat problems; and blindness in his right eye. (Tr. 65-66.) His application was denied initially and upon reconsideration. (Tr. 65, 79.) A hearing convened on February 9, 2016, before an Administrative Law Judge ("ALJ"). (Tr. 36-64.) On March 24, 2016, the ALJ issued a decision finding plaintiff not disabled. (Tr. 15-28.) Plaintiff timely requested review of the ALJ's decision and, after the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3.) Plaintiff subsequently filed a complaint in this court.

## Factual Background

Born in April 1971, plaintiff was 30 years old on the alleged disability onset date and 44 years old on the hearing date. (Tr. 66.) Plaintiff attended school through the tenth grade. (Tr. 181.)

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 42 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity;" if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the Commissioner resolves whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner evaluates whether the claimant's impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant still can perform "past relevant work." *Id.*; 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141.

At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Id.* at 142; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## The ALJ's Findings

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the application date. (Tr. 17.) At step two, the ALJ found plaintiff had the following severe impairments: degenerative disc disease; hip osteoarthritis; loss of visual acuity in the right eye; and borderline intellectual functioning ("BIF"). *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled one of a number of impairments that are so severe as to preclude substantial gainful activity. (Tr. 18.)

Accordingly, the ALJ continued the sequential evaluation process to determine how plaintiff's medical limitations affected plaintiff's ability to work. The ALJ resolved that plaintiff had the following residual functional capacity ("RFC"):

> [He can] perform light work . . . lift and/or carry 20 pounds
> occasionally and 10 pounds frequently . . . sit 6 of 8 hours as well as
> stand and/or walk for 6 of 8 hours . . . frequently climb ramps, stairs,
> and occasionally climb ladders and scaffolding. He has postural
> nonexertional limitations for no more than occasional stooping,
> crouching and crawling as well as performing frequent kneeling.
> Because of his loss in visual acuity of the right eye, he must avoid
> hazards such as heights or machinery. However he is able to avoid
> ordinary hazards in the workplace, such as boxes on the floor, doors
> ajar, or approaching people or vehicles. He is also limited to
> moderate noise. The claimant is limited to simple tasks, simple work
> related decisions[,] and only occasional interaction with the public.

(Tr. 21.)

At step four, the ALJ found plaintiff had no past relevant work. (Tr. 26.) At step five, the

ALJ found that plaintiff retained the capacity to perform the following representative occupations:

rental clerk, motel cleaner, shelving clerk, and another job listed as rental clerk. (Tr. 27.)

Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. (Tr. 27-28.)

*Discussion*

Plaintiff argues the ALJ: (1) improperly rejected the medical opinion of consultative

examiner Kevin Yuen, M.D.; and (2) erroneously failed to incorporate into the RFC limitations set

forth by consultative examiner Heather A. Bee, Psy.D.

I.     Medical Opinion Evidence.

*A.     Dr. Yuen.*

Plaintiff argues the ALJ erroneously discredited portions of the medical opinion of

consultative examining psychologist, Dr. Yuen. An ALJ is responsible for resolving ambiguities and

conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The

ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of

a treating or examining physician, or specific and legitimate reasons for rejecting contradicted

Page 5 - OPINION AND ORDER

opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians are owed deference and will often be entitled to the greatest, if not controlling, weight. *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007) (citation and internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

Dr. Yuen performed a physical examination of plaintiff on August 17, 2012, and produced a report. (Tr. 255-59.) Plaintiff's chief complaint at the exam was "[g]eneralized joint pains and previous [TBI]," which began when he was involved in a motor vehicle accident that occurred a decade earlier. (Tr. 255.) Plaintiff reported that despite his pain, he could complete all of his daily activities, including cooking and cleaning, and providing full-time care for his two children and disabled mother. (Tr. 255-56.) Dr. Yuen indicated that plaintiff did not like to receive medical treatment because of his phobia of doctors, and that plaintiff did not take any painkillers. The doctor did not identify any specific diagnoses, but opined that plaintiff was limited to standing and walking "less than two hours due to neck pains and shoulder blade pains," and could sit for a maximum of four hours, again "due to neck pains and shoulder blade pains." (Tr. 259.) The doctor further opined that plaintiff could lift and carry 20 pounds occasionally or frequently due to shoulder blade pain, and was limited to "occasional" for all postural activities, and "frequent" for all manipulative activities. *Id.* The ALJ accorded "some, but less than significant weight," to Dr. Yuen's opinion,

noting the opinion was rendered after a short, one-time visit, there were no prior medical records to review, and that he relied on the plaintiff's less-than-credible allegations. (Tr. 26.)

Plaintiff first argues that the ALJ erred in according diminished weight to Dr. Yuen's opinion because he performed only a single evaluation without the benefit of prior medical records to review. In support, plaintiff cites a recent case from the District of Oregon where another judge in this district concluded that discrediting an examining doctor's opinion because that doctor met the plaintiff only once was not a valid reason, because most examining physicians examine a plaintiff only once. *See Dubrawsky v. Berryhill*, No. 3:16-cv-00433-AA, 2017 WL 1758054, at *11 (D. Or. May 2, 2017). This court agrees that a consultative examiner examining a claimant only one time is not a specific-and-legitimate reason to discount an examining doctor's medical opinion. If such a rationale were valid, an ALJ could summarily reject virtually any consultative medical opinion, as the overwhelming majority of such opinions are derived from a single clinical visit.

Here, however, the ALJ's rationale involved an additional factor, that in addition to only a single visit, Dr. Yuen did not have any medical history to review. Further, the ALJ concluded that because Dr. Yuen's examination was brief, and that his conclusions were reached without the benefit of prior records, it followed that Dr. Yuen likely relied on plaintiff's subjective symptom testimony, which the ALJ found less than fully credible. (Tr. 23, 26.) The Commissioner also maintains that the ALJ was not required to adopt Dr. Yuen's opinion because it was conclusory and inadequately supported by clinical findings, as the ALJ found, "there were no corroborative medical signs or clinical findings to support the pain behavior exhibited." Def.'s Br. 8-9 (citing (Tr. 25; *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012)).

However, it is not obvious from the record that Dr. Yuen was overly reliant on plaintiff's

subjective symptom allegations. To the contrary, Dr. Yuen performed a thorough physical examination and made numerous clinical findings. (Tr. 256-58.) Notably, the doctor measured plaintiff's range of motion ("ROM") in the back, neck, hips, knees, shoulders, and elbows, and identified limitations. (Tr. 257.) The doctor also observed positive straight-leg raising bilaterally, and decreased motor strength/muscle tone in the upper and lower extremities bilaterally. *Id.* Dr. Yuen also identified tenderness to palpation in plaintiff's neck and right shoulder. *Id.* Additionally, Dr. Yuen observed that plaintiff was in "some degree of distress" when he entered the examination room, that it was not easy for plaintiff to transfer from the chair to the exam table, and that plaintiff shifted in his chair due to pain and had difficulty removing his shoes. (Tr. 256.) At the same time, Dr. Yuen expressly noted that there was "no evidence of poor effort or inconsistencies." *Id.*

As such, the ALJ's finding that there were no corroborative clinical findings to support Dr. Yuen's conclusions is clearly belied by the record: to the extent the doctor opined shoulder and neck pain limited plaintiff, the conclusion appears to have been supported by clinical findings of diminished ROM, diminished strength, tenderness to palpation in those areas, and the doctor's observations of plaintiff's limited mobility. Thus, because Dr. Yuen performed a comprehensive physical examination and was able to establish objective clinical findings, the relevance of Dr. Yuen not being privy to plaintiff's medical records is questionable. Indeed, the Ninth Circuit and courts in the District of Oregon have held that where examining doctors' opinions were derived from their own independent examination, their opinions were not less probative merely because the doctors did not review prior medical records. *See, e.g., Castaneda v. Astrue*, 344 Fed. App'x 396, 398 (9th Cir. 2009); *Sims v. Comm'r of Soc. Sec. Admin.*, No. 3:11-cv-00916-MA, 2015 WL 1517421, at *8 (D. Or. April 1, 2015). In the context of Dr. Yuen's independent examination, it was therefore erroneous

for the ALJ to discredit the doctor's opinion because he did not review prior medical records. Moreover, there were no prior medical records to review: Dr. Yuen's 2012 examination is chronologically the earliest of the medical records in this case.

The Commissioner argues, *post hoc*, that the absence of prior medical records, compounded with plaintiff's assertion to Dr. Yuen that he had not sought treatment and did not take any pain medication, supports the ALJ's finding that the limitations Dr. Yuen assessed were based on non-credible symptom allegations. Def.'s Br. 7-8. However, because that rationale was not set forth in the ALJ's decision, it is not a proper basis for affirming the ALJ's decision. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947)).

Similarly, to the extent the Commissioner argues that the ALJ properly rejected Dr. Yuen's assessment in favor of the opinions of the non-examining physicians of record, the ALJ did not invoke such reasoning in his decision, so the argument is unavailing in upholding the ALJ's finding. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-2000 (9th Cir. 2008) ("[I]t is not possible to cure the ALJ's erroneous rejection of [a doctor's] examining opinion with his finding that this rejection was 'consistent with' the opinions of the two non-examining physicians[.]"). Although here the ALJ did not purport to rely on the non-examining physician opinions to reject Dr. Yuen's, even if the ALJ had done so, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Ryan*, 528 F.3d at 1201-02 (citing *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)) (internal citation omitted).

Finally, the Commissioner contends that Dr. Yuen's opinion is contradicted by other

evidence in the record, including plaintiff's November 2013 report that his pain level was 1-2 with pain medication. (Tr. 18, 284.) While the report may be cause to question whether plaintiff is in fact disabled, the ALJ did not invoke the rationale in rejecting Dr. Yuen's opinion, and therefore the court is constrained from upholding the ALJ's rejection of Dr. Yuen's opinion on that basis. Insofar as the ALJ's erroneous rejection of Dr. Yuen's opinion was material to the ultimate non-disability decision, remand is the appropriate remedy. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

B.    *Dr. Bee and RFC.*

Plaintiff argues that the ALJ implicitly rejected the opinion of examining psychologist Dr. Bee by omitting from the RFC limitations she set forth, despite purporting to accord her medical opinion great weight. Specifically, plaintiff argues that the ALJ failed to incorporate limitations in concentration, persistence, and pace, as well as an assessed limitation in the ability to interact appropriately with supervisors.

Dr. Bee performed a cognitive and psychological evaluation of plaintiff in April 2013. Dr. Bee administered a variety of objective tests, took plaintiff's psychiatric history, and opined on plaintiff's status at the time. Following the examination and testing, Dr. Bee provided a fourteen-page cognitive and psychological evaluation report (Tr. 265-78), a checkbox mental RFC assessment ("MRFCA") worksheet (Tr. 261-62), and a checkbox rating of impairment severity report (Tr. 263-64). In the MRFCA worksheet, Dr. Bee assessed moderate limitations in carrying out detailed instructions, maintaining attention and concentration for extended periods, completing a normal workday and workweek at an acceptable pace without interruptions from psychologically-based symptoms, interacting with the general public, responding appropriately to supervision, and

responding appropriately to changes in the workplace. (Tr. 262.) In the severity report, Dr. Bee assessed moderate limitations in social functioning, and moderate limitations in sustaining concentration, persistence, or pace. (Tr. 263.) In concluding her narrative evaluation, Dr. Bee explained that plaintiff's prognosis was somewhat dependent on his physical health concerns and related functional limitations. (Tr. 277.) The doctor opined that plaintiff "possesses adequate cognitive abilities to function in a variety of jobs and has been successful in occupational endeavors as an adult." *Id.* Dr. Bee, however, noted that plaintiff's prior jobs were physical in nature, and that he has some psychological weaknesses which impair him. *Id.* For example, she concluded that plaintiff struggles in learning information and has difficulty with recall, so he would benefit from having instructions repeated and notes to review. *Id.* Dr. Bee also noted that due to attention deficits, plaintiff would benefit in a work environment with few distractions, and that he would work best in a setting where quality of work, rather than quantity of production, was paramount. (Tr. 278.) Finally, Dr. Bee opined that due to a degree of limitation regarding social interactions, plaintiff would work best in a setting with limited interpersonal contact, and may benefit from a "tolerant and understanding supervisor." *Id.* The ALJ purported to accord Dr. Bee's opinion great weight by limiting plaintiff to simple tasks, simple work-related decisions, and limited public interaction. (Tr. 25.)

Plaintiff specifically argues the ALJ failed to incorporate into the RFC relevant portions of Dr. Bee's opinion, namely: (1) plaintiff's moderate limitations in concentration, persistence, or pace; and (2) plaintiff's supervisory needs. In support, plaintiff argues that because Dr. Bee's opinion was provided in a form that did not explicitly limit its applicability to a narrative statement, the ALJ was required to incorporate the checkbox limitations set forth the mental RFC worksheet in full. Pl.'s

Br. 18-19.

As a threshold matter, plaintiff concedes that in the normal course of a mental RFC evaluation, the physician providing the medical opinion typically completes a checkbox form, then translates the checkboxes in formulating "the actual [RFC] in the narrative explanation on the form, and only the narratives need be incorporated by the ALJ." Pl.'s Br. 18 (citing *Nathan v. Colvin*, 551 Fed. App'x 404, 408 (9th Cir. 2014). The court agrees with that proposition: the checkboxes in a physician's MRFCA worksheet are typically not determinative of the RFC; rather, when the ALJ gives substantial weight to a medical opinion, the ALJ is required to incorporate into the ultimate RFC only the narrative portion of the MRFCA. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005-06 (9th Cir. 2015) (ALJ did not err in omitting supervisory limitation where physician checked a relevant box in the MRFCA worksheet but did not include the limitations in the narrative functional capacity assessment); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ is responsible for translating and incorporating findings into a succinct RFC); *Israel v. Astrue*, 494 Fed. App'x 794, 797 (9th Cir. 2012) (ALJ should incorporate narrative portion of RFC assessment). The narrative section is generally afforded the greatest relevance because when the Social Security Administration's reviewing physicians' complete their assessments in the Disability Determination Explanation at the Initial and Reconsideration levels, "the actual mental [RFC] assessment is recorded in that narrative discussion(s) . . . following each category of limitation." *See, e.g.*, (Tr. 74, 91); *see also* Social Security Administration Program Operations Manual System ("POMS"), DI 24510.060(B)(4)(a); *Nathan*, 551 Fed. App'x at 408.

In contrast to *Rounds*, *Israel*, and *Nathan*, the MRFCA worksheet at issue did not include an entry for a narrative discussion of the mental RFC. Plaintiff contends that because the MRFCA

worksheet in this case did not include a narrative statement section, "all of the limitations in the MRFC [are] part of the doctor's medical opinion." Pl.'s Br. 18. In support, plaintiff cites a recent decision in which this court held that where a doctor's opinion was provided on a form that did not explicitly limit its applicability to a narrative statement, a consultative psychologist's checkbox indication that the plaintiff was moderately limited in interacting with coworkers should be taken as his medical opinion. *Snider v. Berryhill*, No. 1:16-cv-02168-AC, at *4 (D. Or. Jan. 9, 2018) (remanding case, in part, because the ALJ failed to adopt limitations set out in checkbox MRFCA assessment which did not include narrative a discussion).

The Commissioner responds that plaintiff's position conflates the "special technique" analysis for evaluating the severity of a mental impairment at steps two and three of the sequential evaluation process with the ultimate RFC assessment used at steps four and five. Def.'s Br. 12-15. Indeed, the ALJ's decision stated the following:

> The limitations identified in the 'paragraph B' . . . criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 . . . . The mental residual functional capacity assessment used at steps 4 and 5 . . . requires a more detailed assessment by itemizing various functions contained the broad categories found in paragraph B . . . . Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

(Tr. 20-21.) Accordingly, argues the Commissioner, the ALJ's special technique analysis was separate from the RFC, and therefore the ALJ did not err by omitting the limitations set forth in Dr. Bee's MRFCA worksheet regarding plaintiff's moderate limitations in the ability to maintain attention and concentration for extended periods, work at an acceptable pace without interruptions from psychological symptoms, and accept instructions and respond appropriately to supervisors. (Tr.

Page 13 - OPINION AND ORDER

262.) The Commissioner's position is that the "ALJ is responsible for determining a claimant's [RFC], and neither a doctor's opinion nor [p]laintiff's testimony is conclusive[.]" Def.'s Br. 14.

Although the MRFCA worksheet did not include a narrative section, the record reflects the ALJ instead incorporated the narrative statements from Dr. Bee's "rating of impairment severity" worksheet into the discussion regarding the paragraph B assessment of the ADL and social functioning domains, while the narrative statement regarding concentration, persistence, or pace was found to be "unreadable" because of the tiny typeface. *Compare* (Tr. 19-20) *with* (Tr. 263).[2] The ALJ additionally incorporated a combination of the MRFCA worksheet and the first page of the "rating of symptom severity" worksheet into the ultimate RFC formulation, noting that Dr. Bee "opined that the claimant is limited to simple instructions, simple tasks, simple work-related decisions[,] and limited interaction with the public," and according her opinion "great weight." Tr. 25. Further, the ALJ accorded great weight to the State agency psychological examiners, but only "in as much as the opinions have relied on the opinion of Dr. Bee." (Tr. 25, 75, 92.) Thus, the ALJ's decision clearly reflects that he accorded Dr. Bee's opinions regarding plaintiff's mental limitations the greatest weight of any of the medical opinions, both in the paragraph B criteria assessment and the ultimate RFC assessment.

As such, it is unclear why the ALJ neither adopted nor commented on Dr. Bee's assessed moderate limitations in performing at an acceptable pace during the workweek without interruptions from psychological symptoms and responding appropriately to supervisors. (Tr. 262.) "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting

---

[2] The Court notes that the narratives adopted by the ALJ in the paragraph B evaluation were not identified as mental RFC narratives on the worksheet, but rather as "evidence for this assessment rating." (Tr. 263.)

one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Betts v. Colvin*, 531 Fed. App'x 799, 800 (9th Cir. 2013) (mem.) (ALJ erred by failing to incorporate into the RFC limitations regarding performing at a consistent pace without interruptions from psychological symptoms despite according the greatest weight to that physician's opinion). Although the ALJ was not compelled to adopt all of the limitations set forth by Dr. Bee, because the ALJ gave Dr. Bee's opinion the greatest weight, the ALJ was nevertheless required to provide reasons for declining to incorporate into the RFC all of the limitations set forth in the doctor's opinion. The ALJ had two opportunities to properly reject the limitations regarding pace and supervisory requirements, in the discussion of the paragraph B criteria, and in the discussion of the weight given to Dr. Bee's medical opinion in the RFC. Because the ALJ did not comment on either of the assessed limitations in either context, the ALJ implicitly rejected Dr. Bee's more extensive limitations in favor of the reviewing psychologists' opinions – which did not include the pace or supervisory limitations. As such, the Court is persuaded that *Betts* is a persuasive authority for this case. *Betts*, 531 Fed. App'x at 800.

           1.      Concentration, persistence, or pace.

The Commissioner argues that the ALJ adequately accounted for plaintiff's moderate limitations in concentration, persistence, or pace by limiting plaintiff to simple tasks and simple work-related decisions. In support, the Commissioner makes three separate arguments. First, the Commissioner argues that moderate limitations in concentration, persistence, or pace are adequately addressed by a limitations to simple, routine work. Def.'s Br. 15 (citing *Stubbs-Danielson*, 539 F.3d at 1173). The argument fails because *Stubbs-Danielson*'s facts are distinguishable: there, although the "controlling" medical opinions observed some deficiencies in pace and other areas, the medical

opinion testimony ultimately established that Stubbs-Danielson could nonetheless perform simple tasks. *Stubbs-Danielson*, 539 F.3d at 1173-74. Here, in contrast, the "controlling" medical opinion's limitations regarding concentration, persistence, or pace were not translated by Dr. Bee into the capacity to perform simple tasks or simple work. Indeed, the Ninth Circuit has previously distinguished *Stubbs-Danielson* on this very issue, holding that "simple, repetitive work" does not necessarily address assembly-line tasks which require the capacity to work at an increased pace. *See Brink v. Comm'r Soc. Sec. Admin.,* 343 Fed. App'x 211, 212 (9th Cir. 2009) (mem.). Although assembly-line work is not at issue here, the unexplained omission of a limitation regarding pace is nevertheless relevant.

Next, the Commissioner argues that plaintiff's limitations in concentration, persistence, or pace were not adopted by the ALJ because Dr. Bee attributed that limitation to physical pain, which the ALJ found less than fully credible. Def.'s Br. 16. However, the ALJ did not invoke such reasoning in rejecting the limitations in his decision, and therefore the Court is precluded from affirming the Commissioner's decision on such grounds. *See Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1225-26 (9th Cir. 2009) (reviewing court must rely on the reasoning and factual findings offered by the ALJ — not *post hoc* rationalizations).

Finally, the Commissioner maintains that the ALJ appropriately used his discretion to resolve the conflicting medical opinions of Dr. Bee and the reviewing psychologists, and because plaintiff did not directly challenge the weight accorded to the opinions of the reviewing psychologists, any argument has been waived. Def.'s Br. 16 (citing *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003)). The argument is unavailing because plaintiff is not arguing that the ALJ should have given Dr. Bee's opinion greater weight than the reviewing psychologists' opinions. Plaintiff

is instead arguing that despite purporting to give Dr. Bee's opinion the greatest weight, and adopting the reviewing psychologists' opinions to the extent they were consistent with Dr. Bee's, the ALJ actually accorded the reviewing psychologists' opinions the greatest weight. Pl.'s Br. 20-21. As discussed above, the ALJ unequivocally accorded Dr. Bee's opinion the greatest weight, and plaintiff did not waive the argument that despite the weight accorded to Dr Bee's opinion, the limitations assessed by Dr. Bee were not adequately represented in the ultimate RFC determination. Moreover, although the relevant narrative explanation of the limitation in concentration, persistence, or pace was not legible on one of the worksheets Dr. Bee used (Tr. 263), a clear narrative was provided on the final page of Dr. Bee's 14-page cognitive and psychological evaluation, consistent with the limitations set forth in the MRFCA:

> Attention is a prerequisite condition to processing speed and [plaintiff] works more slowly on tasks that are typically automatic in nature. It will be important that he works in a setting that emphasizes quality of work produced rather than volume and speed of work completed. [Plaintiff] may need extra time to complete tasks.

(Tr. 278.) Accordingly, the court is convinced that the ALJ erred by failing to explain why he did not incorporate into the RFC Dr. Bee's assessed limitation regarding pace. *See Betts*, 531 Fed. App'x at 800.

### 2. Interaction with supervisors.

The Commissioner argues that the ALJ did not err in implicitly rejecting Dr. Bee's moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors on three counts. First, the Commissioner asserts that because the State agency reviewing psychologists found plaintiff was not significantly limited in the ability to accept instructions and respond appropriately to criticism from supervisors, the ALJ did not err. As with the limitation

regarding pace, it was error for the ALJ to implicitly reject Dr. Bee's opinion in favor of the reviewing psychologists', absent a legally-adequate rationale. The Commissioner again argues that the plaintiff waived any challenge regarding the reviewing psychologists' opinion on this issue by not separately doing so; however, as above, plaintiff's contention is not that the ALJ accorded disproportionate weight to the reviewing psychologists so much as the ALJ failed to incorporate into the RFC, or provide a reason for omitting from the RFC, the limitations assessed by Dr. Bee, who provided the preeminent medical opinion in this case. Thus, these arguments fail.

The Commissioner also asserts that the ALJ adequately explained his reasoning for omitting a limitation regarding supervisory needs from the RFC in the paragraph B discussion section of the decision. Def.'s Br. 18. The Commissioner notes that the ALJ addressed the fact that despite Dr. Bee indicating plaintiff had a certain amount of hostility in his interpersonal relationships and that others might find him controlling or domineering, he presented well during the evaluation, and that he had never been fired from a job, although he quit one job following a disagreement with a supervisor. *See* (Tr. 20). The Commissioner's assertion is little more than a recitation of the facts, and does not advance the argument that the ALJ's discussion on this issue constituted a sufficient explanation that plaintiff was limited in his ability to work with the public, but not limited in his ability to work with supervisors.

The Commissioner further asserts that other evidence in the record supports the ALJ's omission from the RFC of a supervisory limitation. In support, the Commissioner identifies lay witness testimony that plaintiff gets along "very well" with authority figures, provided by plaintiff's neighbor, and plaintiff's own function report, in which he reported that "I get along with people okay but don't like being around them." (Tr. 192, 203.) Because this evidence was not relied upon by

the ALJ in rejecting a supervisory limitation, the court may not affirm the ALJ on that basis. *Bray*, 554 F.3d at 1225-26.

Finally, the Commissioner argues that even assuming plaintiff had moderate limitation in interacting with supervisors, "[t]here is more than one interpretation of 'moderate' limitations, and the ALJ's interpretation was reasonable." Def.'s Br. 15, 18 (citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2018). The Commissioner overlooks that the issue is not whether the ALJ reasonably interpreted Dr. Bee's use of the term "moderate," but whether the ALJ provided legally-sufficient rationales to reject aspects of a medical opinion the ALJ purported to adopt – a longstanding requirement of Ninth Circuit case law. *Bayliss v. Barnhart*, 427 F.3d at 1216. Therefore, the argument is unavailing.

II.     Remand for Further Proceedings.

Based on the ALJ's harmful errors in evaluating and incorporating the medical opinions of Drs. Yuen and Bee, this case must be remanded. Insofar as plaintiff does not contend that this case should be remanded for the immediate payment of benefits at this juncture, circumstances do not justify a departure from the Ninth Circuit's ordinary remand rule. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1107 (9th Cir. 2014) (citation omitted). On remand, the ALJ must reevaluate the medical opinions of Drs. Yuen and Bee, and, if applicable, provide legally-sufficient reasoning for rejecting the relevant aspects of their opinions, consistent with the foregoing discussion.

## Conclusion

For the reasons stated above, the ALJ's decision was not based on substantial evidence or free of harmful legal error. Therefore, the Commissioner's decision is REVERSED and this case

is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 28th of June 2018.

JOHN V. ACOSTA
United States Magistrate Judge